**UNITED STATES of America, Appellee,**

v.

**Roy M. BOBOWICK, Defendant–Appellant.**

**No. 1439, Docket 96–1657.**

United States Court of Appeals,
Second Circuit.

Argued April 24, 1997.

Decided May 22, 1997.

Robert M. Appleton, Assistant United States Attorney, Bridgeport, CT (Christopher F. Droney, United States Attorney for the District of Connecticut, on the brief), for Appellee.

Peter A. Kelly, New Haven, CT, for Defendant–Appellant.

Before OAKES and JACOBS, Circuit Judges, and STEIN, District Judge.*

PER CURIAM:

Defendant Roy Bobowick pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. On October 3, 1996, the district court sentenced Bobowick to 24 months of imprisonment and three years of supervised release. On appeal, Bobowick contends that the district court abused its discretion by departing upward seven levels pursuant to U.S.S.G. § 2F1.1, Application Note 7. We affirm.

On May 24, 1995, Bobowick submitted by telephone an application for a $250,000 mortgage to a representative of Equity Concepts, Inc., a mortgage broker in Cranston, Rhode Island. During this oral application, Bobowick supplied a false social security number, overstated his income to be $4,000 a month, and misrepresented that he had been self-employed by Keycomm Incorporated for six-

teen years. Not long thereafter, Bobowick was pre-approved for the $250,000 loan, subject to employment and income verification. In response to the mortgage broker's inquiry, Bobowick documented his falsehoods by mailing phony tax returns, phony pay stubs, and phony W–2 forms.

The defendant purported to secure the loan with property located at 152 Stratfield Road, Fairfield, Connecticut, property that was owned by his wife. Bobowick failed to disclose that he had previously owned property that had been subject to foreclosure, including the Stratfield Road property. Nevertheless, a title search by the mortgage broker revealed that numerous loans on the property had been previously foreclosed, and that Bobowick had been convicted for the conduct that resulted in the foreclosures. The title searcher notified the authorities, and an investigation ensued, which resulted in Bobowick's indictment and subsequent guilty plea to wire fraud.

To make matters worse, Bobowick committed this offense while on supervised release following his March 1994 incarceration on federal charges. Bobowick's prior conviction was based upon fourteen loans he had procured through fraudulent means that were quite similar to those he employed in this case. Six of these fourteen loans were secured by the Stratfield Road property, but each lender was unaware of the others' liens because Bobowick had removed the pertinent pages of the Fairfield land records at the Fairfield Town Hall. Thus, the lenders discovered they had no collateral when Bobowick defaulted.

At sentencing on the charges in this case, the district court determined that the defendant's adjusted offense level was six, and that his Criminal History Category was III. Neither finding is challenged on this appeal.

In determining Bobowick's ultimate sentence, the district court departed upward seven levels pursuant to U.S.S.G. § 2F1.1. The parties agreed at sentencing that the appropriate "loss" calculation under the

* The Honorable Sidney H. Stein of the United States District Court for the Southern District of New York, sitting by designation.

guidelines was zero because the property was free of encumbrance and would have been sufficient to secure the loan. But the court explicitly accepted the government's argument that this "loss" significantly understated the seriousness of the defendant's conduct and the risk of loss attendant thereto. The court therefore concluded that, pursuant to § 2F1.1, an upward departure of seven levels was appropriate. Bobowick argues that the district court abused its discretion in this regard. We disagree.

Application Note 7 to U.S.S.G. § 2F1.1 carefully explains how courts should value "loss" in fraud crimes for the purpose of sentence calculation; and subsection (b) to Note 7 explains how loss should be calculated for the specific cases involving fraudulent loan applications:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss).... However, where the intended loss is greater than the actual loss, the intended loss is to be used.

U.S.S.G. § 2F1.1 Note 7(b). The district court determined, and both parties agree, that there was no intended loss in connection with Bobowick's loan because the mortgaged premises was free of other encumbrances and thus sufficiently secured the loan. The second paragraph of subsection (b), however, notes that:

> In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct. For example, where the defendant substantially understated his debts to obtain a loan, which he nevertheless repaid, the loss determined above (zero loss) will tend not to reflect adequately the risk of loss created by the defendant's conduct.... Where the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted.

*Id.*

The district court acted well within its discretion in determining that the zero loss figure did not adequately reflect the seriousness of Bobowick's crime. Although the lender's capital was not actually put at risk because the crime was discovered before the fraud had resulted in the loan being made, the bank was being sucked into a transaction with a person insensitive to his credit obligations and skilled in the extraction of multiple loans from unsuspecting lenders, secured by the identical security interest. It was therefore logical for the district court to conclude that the absence of loss did not fully reflect the seriousness of the crime.

Accordingly, the district court's upward departure was not an abuse of discretion, and we affirm Bobowick's sentence.